**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CORENERGY INFRASTRUCTURE TRUST, INC. | ) CASE NO. 24-40236-CAN11 |
| | ) |
| DEBTOR. | ) |

<u>**LIMITED OBJECTION TO DEBTOR'S MOTION TO ASSUME THE
RESTRUCTURING SUPPORT AGREEMENT (DKT. #20)**</u>

Now comes Jerry L. Jensen, the Acting United States Trustee for Region 13 ("UST"), by and through his counsel of record, and files this limited objection to the Debtor's Motion for an order authorizing the assumption of the Restructuring Support Agreement dated February 25, 2024 (the "RSA"). In support of his objection, the UST states as follows:

1.      This case was commenced with the filing of a voluntary Chapter 11 Petition by CoreEnergy Infrastructure Trust, Inc. (the "Debtor") on February 25, 2024.

2.      Together with the Petition, the Debtor filed a pre-negotiated Plan of Reorganization (the "Proposed Plan"). The Debtor also filed the instant motion to assume the RSA. According to the motion and the RSA, it was executed the same day as the Petition. The Parties to the RSA are the: 1) Debtor; 2) the "Ad-Hoc Noteholder Group" consisting of six private entities holding approximately 90% of the Debtor's outstanding unsecured bond notes; and 3) the Grier Members, including John Grier, whom the UST understands owns the convertible equivalent of significant preferred equity in the Debtor.

3.      Typically, approval of the RSA is governed by the business judgment rule. *See In re: Genco Shipping & Trading Ltd.*, 509 B.R. 355, 463 (Bankr. S.D.N.Y. 2014). However, a "heightened" standard may apply to transactions involving insiders. *In re Inkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010). Here, John Grier is both a board member and

beneficiary and a signatory to the RSA. Accordingly, there is a good-faith, non-frivolous argument that the heightened standard, and not the business judgment rule applies to approval of the RSA.

4.    Nevertheless, after analyzing the relevant factors, the UST does not object to the Debtor's authority to enter an RSA in this case. The UST notes that although Mr. Grier is an insider who received a benefit under the RSA, the majority of the Debtor's board is comprised of independent directors.

5.    However, several items of the RSA merit review and scrutiny by the Court. First, although it appears through the proposed order that the Debtor recognizes this principal, approval of the RSA should not bind the Court regarding confirmation of the plan, especially if a dissenting noteholder objects to the plan. The UST notes the Proposed Plan may not comply with the best-interests of creditors test, and a dissenting creditor may object to the Proposed Plan.

6.    Further, the RSA proposes to pay the attorney and advisor fees of the Ad-Hoc Noteholders Group. The UST asserts that Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code are the exclusive method of approving the compensation sought in this case. By enacting section 503(b) of the Bankruptcy Code, Congress provided a specific procedure and standard for the allowance and approval of fees and expenses incurred by ad hoc committees and others in making a substantial contribution to a case. See 4 Collier on Bankruptcy at ¶ 503.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Administrative expenses, except ordinary course expenses paid pursuant to sections 363 and 364 of the Code, are allowed only after notice and a hearing and are not 'deemed allowed' but rather must be actually allowed by court order."). Section 503 imposes detailed requirements that must be met before approval and payment, including the timely filing of a request for payment by the professional, *see* 11 U.S.C. § 503(a); notice and a hearing before the court, see 11 U.S.C. § 503(b); a showing that such expenses were "actual" and "necessary,"

*see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial committee, or indenture trustee has made a "substantial contribution" to the bankruptcy case, see 11 U.S.C. § 503(b)(3)(D); and a finding by the court that any compensation paid to an attorney or accountant is "reasonable," *see* 11 U.S.C. § 503(b)(4). Moreover, a party's right to payment under section 503(b) is not automatic; it "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999).

7.      A creditor makes a "substantial contribution" if, and only if, its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 943-44 (3d Cir. 1994) (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). Furthermore, to be compensable under section 503(b)(3)(D), the creditor's activity must have "benefit[ed] the estate as a whole." *See Lebron*, 27 F.3d at 944. Activities "which were designed primarily to serve [the applicants'] own interests" are not compensable, because they "would have been undertaken absent an expectation of reimbursement from the estate." *Id.*

8.      The fact that the payment of professional fees is proposed as part of the RSA does not relieve the third-party professionals of their obligation to comply with the requirements of section 503, which is the "sole source" of authority to pay post-petition professional fees on an administrative basis. *Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014) *but see In re Mallinckrodt PLC,* No. 21-167, 2022 WL 906459 (D. Del. March 28, 2022).

9.      Here, it likely premature and not possible to tell on the existing factual record whether the Ad-Hoc Noteholder's have made a substantial contribution to which they would be entitled to fees as an administrative expense.

10.      Even if the Court concludes that approval of the Ad-Hoc Noteholder Group's fees can be approved under Section 363, that approval should not be carte-blanche.  *See, In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).  Rather, the Court should require the fees to be noticed to the UST and parties on the approved service list and be subject to review and approval of this Court using a reasonableness standard.

WHEREFORE, the United States Trustee prays for an order authorizing the Debtor's assumption of the Restructuring Support Agreement only on the conditions set forth herein.

Respectfully submitted,

JERRY L. JENSEN
ACTING UNITED STATES TRUSTEE

and

PATTI J. STANLEY
ACTING ASSISTANT UNITED STATES TRUSTEE

BY: /s/ Adam E. Miller
Adam E. Miller, MO Bar #65429
Office of the United States Trustee
Charles Evans Whittaker Courthouse
400 East 9th Street, Room 3440
Kansas City, MO  64106
(816) 512-1940
(816) 512-1967 Telecopier
adam.e.miller@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served by electronic notification, this 8th day of March, 2024 on the Court's electronic case filing system on:

CorEnergy Infrastructure Trust, Inc.

The Ad-Hoc Noteholder Group

in accordance with Fed. R. Bankr. P. 9014 and Fed. R. Bankr. P. 7005 and 2002.

/s/ Adam E. Miller